1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**

9          **EASTERN DISTRICT OF CALIFORNIA**

10

11   JONI KLYANA,                          )   Case No.: 1:15-cv-01115 LJO JLT
                                            )
12              Petitioner,                 )   FINDINGS AND RECOMMENDATION DENYING
                                            )   PETITION FOR WRIT OF HABEAS CORPUS AND
13        v.                                )   DENYING MOTION FOR INJUNCTION
                                            )
14   CRAIG APKER,                           )
                                            )   (Docs. 1, 13)
15              Respondent.                 )
                                            )
16   _____       )

17          In 2012, a jury convicted Petitioner of several crimes, including armed bank robbery and using a

18   gun during the commission of a violent felony.  (Doc. 11-1)  He was sentenced to serve 120 months in

19   prison and ordered to pay restitution in the amount of $63,490.  Id at 2.  In this action, Petitioner claims

20   that the Bureau of Prison's policy[1] of deducting funds from his prison trust account to repay these

21   amounts is unlawful because the sentencing court failed to determine an ability to pay and failed to set

22   a timetable for the payments.  For the reasons set forth below, the Court recommends the petition be

23   **DENIED**.

24   **I.      Background**

25          Petitioner is in the custody of the Bureau of Prisons and housed at Taft Correctional Institution,

26   in Taft, California. (See Doc. 1 at 2-3)  When he was sentenced, the court ordered him to pay restitution

27   _____

28   [1] In this case, the BOP policy is being carried out by the officials of the private prison contracted with the BOP where
     Petitioner is housed.

1

in the amount of $63,490.  (Doc. 11-1 at 6)  The court ordered,

> The Court finds the defendant does not have the ability to pay a fine and orders the fine waived.
>
> [¶ ]
>
> The defendant shall pay a total of$ 63,790 in criminal monetary penalties, due immediately. **Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties are due as follows**: Balance is due in equal monthly installments of not less than$ 200 per month beginning 60 days following his release from custody. Any balance shall be paid 60 days prior to the expiration of supervision.
>
> **If incarcerated, payment of criminal monetary penalties are due during imprisonment at a rate of not less than $25 per quarter and payment shall be made through the Bureau of Prisons' Inmate Financial Responsibility Program**. Criminal monetary payments shall be made to the Clerk of U.S. District Court, Attention: Finance, Suite 130, 401 West Washington Street, SPC 1, Phoenix, Arizona 85003-2118. Payments should be credited to the various monetary penalties imposed by the Court in the priority established under 18 U.S.C. § 3612(c). The total special assessment of $300.00 shall be paid pursuant to Title 18, United States Code, Section 3013 for Counts 2, 3 and 5 of the Second Superseding Indictment.
>
> Any unpaid balance shall become a condition of supervision and shall be paid within 90 days prior to the expiration of supervision. Until all restitutions, fines, special assessments and costs are fully paid, the defendant shall immediately notify the Clerk, U.S. District Court, of any change in name and address. The Court hereby waives the imposition of interest and penalties on any unpaid balances.

Id., emphasis added.

On November 20, 2014, Petitioner agreed to participate in the Financial Responsibility Program and to pay $50 per quarter toward his restitution amount.  (Doc. 11-1 at 10) On May 15, 2015, Petitioner agreed to participate in the Inmate Financial Responsibility Program.  (Doc. 11-1 at 12)  At that time, he agreed to pay $25 per quarter.  Id.  When entering into the program, Petitioner agreed,

> A STAFF MEMBER HAS PROVIDED ME WITH INFORMATION REGARDING THE POTENTIAL CONSEQUENCES OF REFUSAL ON MY PART TO PARTICIPATE IN THE INMATE FINANCIAL RESPONSIBILITY PROGRAM. I AGREE TO SUBMIT PAYMENTS TOWARD SATISFACTION OF THE FINANCIAL OBLIGATION(S) INDICATED ON THIS FORM IN ACCORDANCE WITH THE PAYMENT PLAN OUTLINED BELOW. I AGREE TO HAVE FUNDS AUTOMATICALLY WITHDRAWN FROM MY ACCOUNT. I AGREE TO FOLLOW THIS PAYMENT PLAN UNTIL THE FINANCIAL OBLIGATION(S) IS SATISFIED.

Id.  Petitioner agreed that participation in the IFRP and the signed agreement, "Supercedes Old FRP Plan" and it would begin in June 2015. Id.

After enrolling in the FRP but before enrolling in the IFRP, Petitioner filed an administrative

2

grievance that complained that,

> Since the sentencing court "failed to set a schedule for repayment 'in consideration of' Inmate Klyana's financial circumstances as required by 18 U.S.C. § 3664 (f)(2), [the prison official] has not [sic] authority to create his own schedule or to collect payments under Inmate Klyana's IFRP plan. As such, Inmate Klyana should be placed on "IFRP Exempt" status and that [the prison official] must stop to threaten him to enter into an invalid contract to collecting payments until the sentencing court amends its restitution order to include a payment schedule as being usurped that authority by [the prison official.]

(Doc. 1 at 11)  The grievance claims that the sentencing court was obligated to set a payment schedule that considered Petitioner's financial condition.  Id.  Given Petitioner's claim that this did not occur, he asserted that he should be placed on "exempt" status and not be required to participate in the IFRP and not suffer the consequences of failing to do so.[2]  Id.

In response, the Warden (Respondent here) noted that the sentencing court "correctly addressed your ability to pay and correctly set a schedule for payment while incarcerated." (Doc. 11-1 at 18-19)  Respondent also reviewed the obligations under the Financial Responsibility Program set forth in CFR § 545.11 and the local policy and detailed those obligations in his written response.  Id.  Finally, Respondent reminded Petitioner that he was not required to participate in the IFRP but his failure to do so would result in the denial of the privileges that participation in the program provides.  Id.  As a result, Respondent denied Petitioner's request for placement on "IFRP exempt" status.  Id.

After this, Petitioner did not pursue any additional administrative remedies which Respondent claims were available.  (Doc. 11-1 at 1)  Indeed, Petitioner does not deny this.  While admitting his obligation to exhaust administrative remedies, he argues that exhaustion is not jurisdictional and that further appeal would have been futile. (Doc. 12 at 2-3)  He claims that further appeal was not available and describes issues related to the IFRP as an "MTC matter" rather than a "BOP matter."  Toward this end, Petitioner supplies one page of the "inmate's handbook" and seems to rely upon the following section:

> a.    "Taking of inmate property" does not include confiscation of

---

[2] The consequences for failing to participate in the IFRP include being restricted to only $5.25 per month of "performance pay," restricted to spending no more than $25 at the commissary each month, prohibited from spending more that the "monthly spending limitations" except as to stamps, hygiene items and telephone call costs, and being assigned to "non-preferred housing," which could include "dormitory, triple bunking, extra low bunking."  (Doc. 11-1 at 13)

3

contraband. This category is intended to provide an appeal where theft/conversion of an inmate's money or property by MTC/TCI staff is alleged, where a DHO sanction takes money or property away from an inmate as punishment, or when MTCITCI requires an inmate to spend money (e.g., adverse Inmate Financial Responsibility Program (IFRP). determinations, mandatory charitable contributions, etc.).

7.     Issues directly involving BOP staff

8.     Issues that happened while the inmate was confined in a BOP facility

**MTC matters are defined as all other matters relating to any aspect of an inmate's own confinement which is not defined as a Bureau of Prisons matter above.**

(Doc. 12 at 8, emphasis added).

In this action, Petitioner alleges the collection of restitution via the IFRP is improper because the sentencing court failed to set a repayment schedule and TCI employees were not authorized to collect his restitution payments under the IFRP.

## II.     Discussion

### A.     Jurisdiction

A federal court may not entertain an action over which it has no jurisdiction.  Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000).  A federal prisoner challenging the manner, location, or conditions of that sentence's execution must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241.  Capaldi v. Pontesso, 135 F.3d 1122, 1123 (6th Cir. 1998);  United States v. Tubwell, 37 F.3d 175, 177 (5th Cir. 1994); Kingsley v. Bureau of Prisons, 937 F.2d 26, 30 n.5 (2nd Cir. 1991); United States v. Jalili, 925 F.2d 889, 893-94 (6th Cir. 1991);  Barden v. Keohane, 921 F.2d 476, 478-79 (3rd Cir. 1991);  United States v. Hutchings, 835 F.2d 185, 186-87 (8th Cir. 1987); Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

Petitioner is challenging the manner in which facility officials are executing the order of restitution.  Because he is challenging the manner, location or conditions of his sentence, proceeding under § 2241 is appropriate and the Court has jurisdiction.

### B.     Exhaustion

In general, federal prisoners must exhaust the federal administrative remedies prior to filing a habeas corpus petition pursuant to 28 U.S.C. § 2241.  See Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir.1986) (per curiam) ("Federal prisoners are required to exhaust their federal administrative remedies

4

prior to bringing a petition for a writ of habeas corpus in federal court."); see also Huang v. Ashcroft, 390 F.3d 1118, 1123 (9th Cir.2004); Fendler v. U.S. Parole Comm'n, 774 F.2d 975, 979 (9th Cir.1985). While the exhaustion is not jurisdictional, its importance is well established. See Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990), overruled on other grounds, Reno v. Koray, 515 U.S. 50 (1995); see also Singh v. Napolitano, 649 F.3d 899, 900 (9th Cir.2011) (per curiam) (as amended) ("In order to seek habeas relief under section 2241 ... a petitioner must first, 'as a prudential matter,' exhaust his or her available administrative remedies.") (citation omitted); Castro–Cortez v. Immigration & Naturalization Serv., 239 F.3d 1037, 1047 (9th Cir.2001) ("[S]ection [2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.") (footnote omitted), abrogated on other grounds, Fernandez–Vargas v. Gonzales, 548 U.S. 30 (2006). Requiring exhaustion aids "judicial review by allowing the appropriate development of a factual record in an expert forum." See Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983) (per curiam). Use of available administrative remedies conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." Id. Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." Id.

Courts have discretion to waive the exhaustion requirement where "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir.2004) (citation omitted); see also Acevedo–Carranza v. Ashcroft, 371 F.3d 539, 542 n. 3 (9th Cir.2004). A "key consideration" in exercising such discretion is whether "relaxation of the requirement would encourage the deliberate bypass of the administrative scheme." Laing, 370 F.3d at 1000 (quoting Montes v. Thornburgh, 919 F.2d 531, 537 (9th Cir.1990)).

The United States provides an administrative remedy process through which BOP inmates may seek formal review of an issue relating to any aspect of their confinement. See 28 C.F.R. § 542.10. In order to exhaust available administrative remedies within this system, an inmate must proceed through four levels of review.

First, "before an inmate submits a Request for Administrative Remedy," the inmate must attempt to "informally resolve" the issue at the institution where it occurred by presenting the issue to staff on the required form.  See 28 C.F.R. § 542.13(a).  If the issue cannot be informally resolved within 20 calendar days from the date of the occurrence, the inmate may submit a formal written Administrative Remedy Request to the staff member designated to receive these requests.  See 28 C.F.R. § 542.14(a).  The Warden has 20 calendar days to respond, although the Warden may extend this period up to 20 days with written notice to the inmate.  See 28 C.F.R. § 542.18.

If the inmate is not satisfied with the Warden's response, he may proceed to the third level of administrative review by appealing the matter to the Regional Director within 20 days. See 28 C.F.R. § 542.15(a). The Regional Director has 30 days to respond, though the Director may extend this period by up to 30 days with written notice to the inmate.  See 28 C.F.R. § 542.18.

It is undisputed that Petitioner exhausted his claims only through the first formal level. However, Petitioner argues that further appeal was futile because no further appeal avenues were available to him.  (Doc. 12 at 3)  Toward this end, Petitioner attaches a single page from the inmate's handbook, which he argues establishes that because his complaints about the IFRP was an MTC issue, rather than a BOP issue, he was precluded from further appeal.  The Court does not read this document that way.

The document notes that the handbook defines "MTC matters" as "all *other* matters relating to any aspect of an inmate's own confinement which is not defined as a Bureau of Prisons matter above." (Doc. 12 at 8, emphasis added)  Notably, one matter "defined above," which is "intended to provide an appeal" includes "when MTC/TCI requires an inmate to spend money (e.g., adverse Inmate Financial Responsibility Program (IFRP) determinations . . ." Id.  Thus, on its face, this document demonstrates that Petitioner's complaints about the IFRP payments is a "BOP matter" for which an appeal is provided.

Because Petitioner has failed to demonstrate that further appeal would have been futile and Respondent presents evidence that further appeal was required (Doc. 11-1 at 1), the Court finds Petitioner failed to exhaust his administrative remedies and finds no grounds to excuse compliance with the exhaustion requirement.  Thus, the petition should be denied as unexhausted.

6

C.      **Validity of Petitioner's Restitution Order**

Even if the claims were exhausted, they fail on their merits.  Petitioner challenges the authority to remove funds from his trust account pursuant to the IFRP because, he claims, the sentencing court failed to consider his ability to pay restitution and failed to set a payment schedule.

1.      **Factual Background**

When Petitioner was sentenced, the court imposed hefty restitution and a special assessment. The court ordered,

> The defendant shall pay a special assessment of $300.00, which shall be due immediately.
> **The Court finds the defendant does not have the ability to pay a fine** and orders the fine waived.
> The defendant shall pay restitution to the following victim(s) in the following amount(s):
> Mid First Bank, $50,900.00; TCF Bank, $5,936.00; and, National Bank of Arizona, $6,654.00, to be paid jointly and severally with the co-defendant(s) in this case.
> The defendant shall pay a total of $ 63,790 in criminal monetary penalties, due immediately. **Having assessed the defendant's ability to pay**, payment of the total criminal monetary penalties are due as follows: Balance is due in equal monthly installments of not less than $ 200 per month beginning 60 days following his release from custody. Any balance shall be paid 60 days prior to the expiration of supervision.
> **If incarcerated, payment of criminal monetary penalties are due during imprisonment at a rate of not less than $25 per quarter and payment shall be made through the Bureau of Prisons' Inmate Financial Responsibility Program**. Criminal monetary payments shall be made to the Clerk of U.S. District Court, Attention: Finance, Suite 130, 401 West Washington Street, SPC 1, Phoenix, Arizona 85003-2118. Payments should be credited to the various monetary penalties imposed by the Court in the priority established under 18 U.S.C. § 3612(c). The total special assessment of $300.00 shall be paid pursuant to Title 18, United States Code, Section 3013 for Counts 2, 3 and 5 of the Second Superseding Indictment.
> Any unpaid balance shall become a condition of supervision and shall be paid within 90 days prior to the expiration of supervision. Until all restitutions, fines, special assessments and costs are fully paid, the defendant shall immediately notify the Clerk, U.S. District Court, of any change in name and address. The Court hereby waives the imposition of interest and penalties on any unpaid balances.

(Doc. 11-1 at 6, emphasis added.)  Thus, the court noted that, before determining the restitution amount, it considered Petitioner's ability to pay.  Id.  Likewise, it determined that despite his inability to pay the fine, he *could* pay the restitution while in custody.  Id.

2.      **The IFRP**

The Inmate Financial Responsibility Program applies to nearly all post-trial inmates in federal

facilities.[3] 28 C.F.R. § 545.10.  The purpose of the program is to encourage inmates to meet their "legitimate financial obligations." See 28 C.F.R. § 545.10; United States v. Lemoine, 546 F.3d 1042, 1046 (9th Cir.2008). Under the IFRP, staff members develop a financial plan for each inmate and monitor his progress in adhering to that plan. See 28 C.F.R. §§ 545.10, 545.11; Lemoine, 546 F.3d at 1047. The IFRP is a voluntary program and inmates may choose not to participate but the failure to participate in or to comply with a financial plan carries consequences, such as denials or limitations on furloughs, pay, work detail, commissary spending, housing status, and placement in community-based programs. See 28 C.F.R. § 545.11(d); Lemoine, 546 F.3d at 1047.

In Lemoine, 546 F.3d at 1049, the Ninth Circuit held that such consequences are reasonably related to the legitimate penological interest of rehabilitation and do not constitute such an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" that they invoke any constitutionally protected liberty interest.

### 3.    The MVRA

The Mandatory Victim's Restitution Act of 1996 provides:

(f) (1)(A) In each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant.

(B) In no case shall the fact that a victim has received or is entitled to receive compensation with respect to a loss from insurance or any other source be considered in determining the amount of restitution.

(2) Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of—

    (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
    (B) projected earnings and other income of the defendant; and

    (C) any financial obligations of the defendant; including obligations to dependents.

---

[3] TCI is a federal facility operated by the private corporation, MTC. See Edison v. United States, 2013 WL 4828579, at *1 (E.D. Cal. Sept. 9, 2013) ["Taft Correctional Institution is a government-owned, contractor-operated facility for federal inmates."]  Likewise, the BOP identifies TCA as "A contracted correctional institution, operated by a private corporation." https://www.bop.gov/locations/ci/taf/.  Court may take judicial notice of facts that are subject to ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993). This Court's opinions and the website of the Bureau of Prisons are sources whose accuracy cannot reasonably be questioned.

1   18 U.S.C. § 3664(f)(1)-(2). The statute requires the sentencing court to specify the manner in which,

2   and the schedule according to which, the restitution is to be paid.  The court's duty to set a schedule for

3   the payment of restitution is non-delegable. United States v. Gunning (Gunning I ), 339 F.3d 948, 949

4   (9th Cir.2003) (an order making restitution payable "immediately," with any amount unpaid after the

5   defendant's release "to be paid during the period of supervision as directed by a U.S. probation officer,"

6   constituted an impermissible delegation of the court's authority to the probation officer); United States

7   v. Gunning (Gunning II ), 401 F.3d 1145, 1149 (9th Cir.2005) (an order directing the payment of

8   restitution "immediately" through the IFRP program while imprisoned in an amount of not less than ten

9   percent of the defendant's gross income commencing thirty days after release from imprisonment,

10  constituted an impermissible delegation of authority because there was no adequate provision for

11  payment during the period of imprisonment between the petitioner's sentencing and the petitioner's

12  supervised release).  Accordingly, a restitution order that is "due" or to be paid "immediately" and

13  made with an expectation that the BOP or probation will work out the details of payment, constitutes an

14  impermissible delegation of authority. Ward, 678 F.3d at 1047–48.

15       However, where the court determines that the defendant has the financial ability to pay the

16  restitution in full immediately, the order requiring payment "immediately," is permissible.  18 U.S.C. §

17  3664(f)(2); United States v. Martin, 278 F.3d 988, 1006 (9th Cir.2002); Ward, 678 F.3d at 1048–49; 18

18  U.S.C. § 3572(d) ["A person sentenced to pay a fine or other monetary penalty, including restitution,

19  shall make such payment immediately, unless, in the interest of justice, the court provides for payment

20  on a date certain or in installments."].  Thus, where the court determines that the defendant's financial

21  resources are such that periodic payments are unwarranted, then it is appropriate for a district court to

22  order payment immediately; in such circumstances, no improper delegation occurs. Ward, 678 F.3d at

23  1049–50; United States v. Martin, 278 F.3d at 1006 (an order requiring immediate payment where the

24  defendant's financial resources were found insufficient to warrant periodic payments is proper).

25       In contrast, where the court determines defendant has insufficient financial resources to make

26  immediate repayment, then the district court must set forth a payment schedule. Ward, 678 F.3d at

27  1049.  If the court fails consider the defendant's ability to pay but orders "immediate" payment, the

28  restitution order is insufficient because of a failure to set forth a schedule. Id. The court in Ward

9

summarized the authorities as follows:

> For a restitution order to be lawful, therefore, § 3664 requires that the district court set a schedule in consideration of the defendant's financial resources. If the court considers the defendant's financial resources and concludes that periodic payments are unwarranted "in the interest of justice," the order is lawful, as we concluded in <u>Martin</u>. If, however, the district court simply orders immediate repayment and leaves it to another agency, like the BOP, to actually set the payment schedule that the statute obligates the court to determine, that order is unlawful, as the district court has abdicated in its duty to set the schedule "in consideration of" the financial circumstances of the defendant.

<u>Ward</u>, 678 F.3d at 1050.  Thus, the BOP "lacks the authority to collect restitution payments through the IFRP" when the criminal judgment requires "immediate" payment but does not include a payment schedule. <u>Id</u>. at 1051.

### 4.    Analysis

Petitioner contends that because the sentencing order did not set forth a payment schedule, prison officials were without authority to collect a payment through the IFRP.  (Doc. 1 at 3-5) However, the Court is at a loss to understand why Petitioner takes this position.  The Court considered his ability to pay ("**Having assessed the defendant's ability to pay** . . .") and set a payment schedule effective while Petitioner is in prison ("not less than $25 per quarter"). (Doc. 11-1 at 6)  This is sufficient. <u>Lemoine</u>, 546 F.3d at 1047.  Thus, the petition should be denied.

However, in his traverse, Plaintiff tweaks his argument to contend that because he is housed at TCI, the private employees of MTC are not authorized to collect the IFRP payments.  In doing so, he offers no legal authority for the proposition that BOP inmates housed at federal facilities run by private contractors are excluded from the IFRP.  Notably, in <u>Lemoine</u>, the Court determined that even though the petitioner had been released from prison to a Residential Reentry Center—which was "independently operated."  Lemoine. 546 F.3d at 1046 n. 2.  The Court observed,

> Although RRCs are independently operated, Lemoine remains in federal custody and subject to the BOP's authority. By contract, the BOP requires its RRCs to "provide for the continuity of the Bureau's institution policy concerning the Inmate Financial Responsibility Program" and mandates that they "establish a program" whereby they monitor an inmate's progress on his or her "financial plan." BOP, Residential Reentry Center Statement of Work, at 48 (Aug.2007), at http://www.bop. gov/locations/ cc/res_rentry_ctr_sow_2007.pdf. Thus, Lemoine continues to have standing to challenge the BOP's authority to condition participation in the IFRP on higher restitution payments than required by the sentencing court.

As in <u>Lemoine</u>, Petitioner is in custody of the BOP regardless of the fact that he is currently housed in a

10

facility operated by a private corporation.  MTC has developed procedures for the inmates to participate in the IFRP which mirrors those developed by BOP.  (Doc. 11-1 at 39-46)  Thus, he is subject to the election to participate in the IFRP.  Lemoine. 546 F.3d at 1046 n. 2.  The suggestion that MTC employees are not authorized to receive payments made under the IFRP—merely because they are not direct BOP employees—holds no more water than in Lemoine when raised as to the private employees of the RRC.  Thus, the Court rejects this argument and concludes that just as these private employees of the RRC were entitled to collect the payments made under the LFRP, so too may the employees of MTC.

Moreover, in light of the Ninth Circuit's finding in Lemoine, the Court rejects Petitioner's arguments based upon the definitions set forth in the C.F.R. of the words, "warden" and staff" require a different result. First, as noted by Respondent, "Warden" is defined in 28 C.F.R. § 500.1 to include "the chief executive officer of . . . *any* federal penal or correctional . . . facility." Emphasis added.  Clearly, TCI is a federal correctional facility and Respondent is the chief executive of that facility.  Thus, Respondent here, is the "Warden" of TCI.  Second, though the C.F.R. appears to define "staff" in the context of inmate discipline to include only employees of the BOP (28 CFR 500.1(b).), section 545.11 modifies this term to refer to "unit staff" and the "unit team" as those tasked with assisting the inmate in developing the financial plan. 28 C.F.R. 545.11.  There is no argument offered that Petitioner's housing arrangement at TCI does not include "unit staff" or the "unit team."

Indeed, the BOP developed the procedures to implement the IFRP, and reiterated that the responsibility of formulating the inmate's financial plan, was placed on "unit staff" at the time of classification or, if not then, than at the time of the "first Program Review.  (Doc. 11-1 at 24)  TCI's local procedures are similar and define "Unit Team/Staff" as the "Classification Team" which is made up of a Counselor, Case Manager, and Unit Manager." Id. at 39.

Interpreting the regulations of 28 C.F.R. 545.10 et seq. to apply equally to contract facilities is consistent with the Ninth Circuit's ruling in Lemoine and furthers the goals of the IFRP which is to "enforce[e] sentencing orders and ensur[e] that inmates fulfill their financial obligations to make good the harm they visited upon their victims." Lemoine, 546 F.3d at 1045.  For these reasons, the Court recommends the petition for writ of habeas corpus be **DENIED**.

11

**D.**     **Petitioner's Motion for Injunction**

Because the Court recommends the petition for writ of habeas corpus be denied, the Court recommends Petitioner's motion for injunctive relief (Doc. 13) be found to be **MOOT**.

**III.**     **Findings & Recommendation**

For the reasons set forth above, the Court recommends:

1.     The petition for writ of habeas corpus (Doc. 1) be **DENIED;**

2.     The motion for injunctive relief (Doc. 13) be found to be **MOOT**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  **Within 21 days** after being served with these findings and recommendations, Petitioner may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."    Replies to the Objections shall be served and filed **within 10 days** (plus three days if served by mail) after service of the Objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the Order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991); Wilkerson v. Wheeler, 772 F.3d 834, 834 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **December 14, 2015**         **/s/ Jennifer L. Thurston**
                                                        UNITED STATES MAGISTRATE JUDGE